## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**LUCRETIA STEWART,**

       **Plaintiff,**

v.

**EQUIFAX INFORMATION**
**SERVICES, LLC, and**
**CREDIT ONE BANK, N.A.,**

       **Defendants.**

**Case No. 16-2781-DDC-KGG**

### MEMORANDUM AND ORDER

Plaintiff Lucretia Stewart brings this lawsuit against defendants Equifax Information Services, LLC ("Equifax") and Credit One Bank, N.A. ("Credit One"), alleging that defendants violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. All parties have filed motions for summary judgment. Plaintiff has filed Motions for Partial Summary Judgment against defendant Credit One (Doc. 66) and defendant Equifax (Doc. 68). Both motions seek summary judgment in plaintiff's favor on defendants' liability on her FCRA claims. Defendant Equifax has filed a Motion for Summary Judgment (Doc. 61), as has defendant Credit One (Doc. 64). Defendants' motions seek summary judgment against plaintiff's FCRA claims.

After considering the parties' arguments, the court concludes that the summary judgment facts, even when viewed in plaintiff's favor, establish no genuine issue whether defendants violated the FCRA. The court thus grants defendants' summary judgment motions and denies plaintiff's motions seeking partial summary judgment.

## I.      Uncontroverted Facts

The following facts are either stipulated facts taken from the Pretrial Order (Doc. 71), uncontroverted, or, where controverted, stated in the light most favorable to the party opposing summary judgment.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### *The Parties*

Defendant Credit One is a national bank engaged in the business of extending consumer credit in the State of Kansas and elsewhere.  Credit One also is a furnisher of consumer credit information.  Defendant Equifax is a limited liability company and a consumer reporting agency.  Equifax is engaged in the business of credit reporting in the State of Kansas.

### *Equifax's Business, Policies, and Procedures*

In its business, Equifax gathers information about consumers from various sources, including banks, collection agencies, and court records.  It then uses that information to create credit files for more than 200 million consumers in the United States.  Equifax uses those files to prepare consumer reports that its subscribers can purchase and use to evaluate the consumer's potential credit risk as well as other permissible purposes.

Equifax accepts credit information from sources who it has determined are reasonably reliable based upon Equifax's own investigation, the source's reputation in the community, or Equifax's longstanding business relationships with the source.  When Equifax receives a request from a company to become a data furnisher, it generally conducts an investigation to ensure that the company is reliable.  Equifax typically requires each company to complete a detailed application and sign a subscriber agreement.  The subscriber agreement requires the company to certify that it will acquire consumer reports only for permissible purposes under the FCRA and that it otherwise will comply with all FCRA requirements.  They include the requirement that the

data furnisher investigate consumer disputes.  The subscriber agreement also requires data furnishers to supply only accurate, up-to-date information.

After Equifax receives an application, subscriber agreement, and valid business license, Equifax's new-accounts department conducts an investigation of the company.  This investigation may include an onsite visit to determine the company's legitimacy and reliability.

Data furnishers provide consumer credit information to Equifax in a standardized electronic format.  After receiving this data, Equifax conducts a series of computerized quality checks before it adds that data to its consumer database.  These checks are designed to determine whether the data is in the proper format and whether the data as a whole deviates from expected norms (based on past experience with that particular source).

### *Plaintiff's Ex-Husband Opens a Credit One Account*

Plaintiff resides in Kansas.  In 2005, plaintiff divorced her husband.  Although they had divorced, plaintiff's ex-husband lived with her for some time during 2013, because he recently had been released from jail and was facing financial issues.  Around the end of September 2015, plaintiff's ex-husband moved out of plaintiff's home after she asked him to leave.

In January 2016, plaintiff's ex-husband opened a Credit One credit card account ("the Account").  The credit application for this Account states that the applicant is plaintiff's ex-husband, lists an address that is plaintiff's address, and adds plaintiff as an authorized user.  The application also provides plaintiff's date of birth and it states that she, as an authorized user, is the applicant's current spouse.  Plaintiff testified that she did not know that her ex-husband had applied for the card and identified her as an authorized user.

Plaintiff's ex-husband defaulted on his obligation for the credit card, and the Account became delinquent.  Credit One made a report to Equifax that the Account was delinquent, and

identified plaintiff as an "authorized user" on the Account. After Credit One made the report to Equifax, the account appeared in the "Adverse Accounts" section of plaintiff's Equifax credit report. It was her only Adverse Account. Also, Equifax's credit file for plaintiff shows her status for the Account as: "Account Owner: Authorized User."

Plaintiff testified that she first learned that she was identified as an authorized user on the Account when she checked her credit score and noticed that it had declined. But plaintiff has produced no documents showing that her credit score ever declined. Instead, the summary judgment record contains several records showing that plaintiff's credit score never declined during the relevant time period. Also, plaintiff agrees that authorized users are not responsible to make payment on balances due.

On June 30, 2016, plaintiff submitted an online dispute about the Account to nonparty Trans Union LLC. In response to plaintiff's online dispute, Trans Union deleted the Account from her Trans Union credit report.

That same day, plaintiff submitted an online dispute of the Account to Equifax. Plaintiff identified the "dispute code" on the "Automated Credit Dispute Verification" ("ACDV") form as "001." The dispute code "001" means "not his account/her account." Doc. 75-1 at 1. The ACDV form offers many different dispute codes for consumers to choose to explain the nature of the dispute. There are separate dispute codes for identity theft (003) and fraud (004).

The exact words that plaintiff used to describe her dispute were transcribed into the FCRA relevant information field on the ACDV form. Plaintiff described her dispute in this fashion:

> THIS IS NOT MY ACCOUNT SO I CAN ONLY ASSUME IT WAS OPENED FRAUDULENTLY OR WAS POSTED TO MY BUREAU IN ERROR. I PULLED MY BUREAU AFTER SEEING MY FICO SCORE HAD DROPPED FOR LATE PAYS I SEE FOR FREE ON MY CITIBANK CARD.

4

*Id.*  Plaintiff submitted no documents to support her dispute.  Plaintiff also did not use the phrase "authorized user" in her dispute.  Plaintiff never explained to Equifax that her concern was that the Account listed her as an authorized user.  And plaintiff never identified her ex-husband as the Account holder who had designated her as an authorized user without her permission.

### *Equifax's Procedures For Reinvestigating Consumer Disputes*

Equifax maintains detailed policies and procedures designed to assure that it conducts reasonable reinvestigations of information that consumers dispute as inaccurate.  Equifax has adopted several different, furnisher-specific procedures for authorized users to use when they dispute ownership of an account.  Equifax has no furnisher-specific procedure for a report by a Credit One authorized user account who disputes ownership of the account.

Equifax provides three different avenues for a consumer to dispute information contained on an Equifax credit report.  Those three avenues are:  (1) telephone dispute; (2) written and mailed dispute; and (3) online disputes received through an Internet portal on Equifax's website.  When Equifax receives a dispute, it locates the consumer's credit file and opens an Automated Consumer Interview System ("ACIS") case that tracks the reinvestigation's process.  Equifax then reviews and considers all relevant information (including documentation, if any, provided by the consumer) and reviews the contents of the consumer's credit file.  If further investigation is required, Equifax notifies the source of the account information (the "data furnisher") about the consumer's dispute, identifies the nature of the consumer's dispute, and includes the consumer's account information as it then appears in Equifax's credit file.

When Equifax receives a consumer dispute by phone or mail, a person charged with ensuring that the dispute is accurately categorized and coded reviews the dispute.  But when Equifax receives a dispute through its website via its online dispute portal, no one reviews the

submission.  When a consumer submits a dispute to Equifax through its website via its online

dispute portal, the consumer codes the dispute according to the consumer's perception of the

alleged inaccuracy.  No one at Equifax reviews the coding chosen by consumers to describe

disputes when submitted through Equifax's website via its online dispute portal.  Instead, an

automated process accepts the information the consumer provides and sends it to the data

furnisher.

Equifax generally makes these communications to data furnishers by transmitting the

ACDV form.  If the consumer provides PDF documents to support a dispute, Equifax also

includes the documents with the ACDV form that it provides to the furnisher.  When the data

furnisher receives the dispute from Equifax, it generally is required, both by its contract with

Equifax and by the FCRA, to conduct its own investigation and report the results back to

Equifax.  If the data furnisher advises Equifax to delete or otherwise update the account

information, then Equifax takes the necessary action and notifies the consumer.  After the

reinvestigation is completed, Equifax sends the consumer the results along with a summary of

the consumer's rights under the FCRA, additional steps the consumer may take, and a

description of the procedures used to reinvestigate the dispute.

At Equifax, the individuals who handle consumer disputes must complete training.  This

process includes training about Equifax's reinvestigation policies and procedures.  The

individuals first must participate in classroom instruction.  After completing the classroom

instruction, Equifax requires each participant to pass a competency test.  If the participant

achieves a passing grade, Equifax provides more on-the-job training.

### *Credit One's Procedures For Investigating Consumer Disputes*

When Credit One receives a consumer dispute from a credit reporting agency, it is obligated to investigate "reasonably" how the information it is providing should appear. So, Credit One employs extensive procedures for handling ACDV disputes. Credit One has as many as 150 employees who handle ACDV disputes. About five to eight of these Credit One employees process ACDV disputes every shift. These employees earn about $15 an hour or an annual salary in the range of $32,000 to $33,000.

Credit One also uses overseas vendors who employ about 200 people working around the clock to investigate ACDV disputes. Although Credit One does not supervise the payroll and timesheets for these employees, it does provide performance feedback, constant communication about quality, and joint training. These vendors also conduct reviews of these employees. In addition to the employees handling ACDV disputes, Credit One also employs fraud investigators as members of its customer service team.

Credit One processes more than 110,000 FCRA disputes each month. Credit One spends, on average, about five to six minutes investigating a ACDV dispute. But the amount of time spent investigating a dispute also depends on the nature of the documents provided by the credit reporting agency.

### *Equifax and Credit One's Response to Plaintiff's Online Dispute*

Equifax created a ACDV form based on the dispute plaintiff submitted online in June 2016. On July 1, 2016, Equifax sent that ACDV form to Credit One. The ACDV form used the same language that plaintiff had used when she submitted the dispute to Equifax. It also identified the same dispute code that plaintiff had selected.

On July 2, 2016, Credit One received the ACDV form from Equifax about the Account plaintiff was disputing. After receiving the ACDV form, Credit One began a dispute review process. The review process is not automated; instead, a person reviews the dispute on Credit One's behalf. The reviewer views the ACDV dispute form on one screen while reviewing Credit One's information about the consumer on another screen. After conducting this review, the reviewer inputs Credit One's response into the ACDV form and sends it back to the credit reporting agency who generated the ACDV form.

In this case, Angela Andreas reviewed plaintiff's dispute. Ms. Andreas is employed by a vendor who contracts with Credit One to investigate ACDV disputes. When Credit One investigates a dispute, it relies on the dispute code selected by the consumer. Plaintiff's selected dispute code of "001" did not correlate to the narrative that she provided on the form.

On July 4, 2016, Credit One submitted a response to the ACDV to Equifax. Credit One's response to Equifax verified and affirmed its reporting of the Account. Credit One confirmed plaintiff's identification and listed her as an authorized user of the Account. Credit One's July 4, 2016 response concluded its investigation of the dispute. That same day, Equifax provided its reinvestigation results to plaintiff.

Credit One never investigated plaintiff's dispute for fraud. But when she submitted her dispute, plaintiff never coded her dispute as one involving fraud. Instead, plaintiff had coded the dispute as "not his account/her account." And plaintiff recited that the Account was not her account so she "can only assume it was opened fraudulently or posted to my bureau in error." Doc. 75-1 at 1.

In July 2016, plaintiff called Credit One several times to ask about the reported delinquent Account. Plaintiff first called Credit One on July 7, 2016. After this phone call,

Credit One removed plaintiff as an authorized user on the Account. Yet, the Account still appeared on plaintiff's credit report after that date.

On July 21, 2016, plaintiff again called Credit One. She again asked Credit One to remove her as an authorized user on the Account. During that telephone call, plaintiff asked Credit One for a letter confirming that it had reported the Account inaccurately and that it was removing her as an authorized user.

In August 2016, Credit One drafted an AUD ("automated universal data") removing plaintiff as an authorized user on the Account. Credit One was supposed to send the AUD to all three credit bureaus. But mistakenly, it never sent the AUD. On August 24, 2016, plaintiff mailed a letter to Credit One again disputing its report that plaintiff was an authorized user of the Account. Plaintiff's August 24, 2016 letter to Credit One again asserted that she had no knowledge that her ex-husband had made her an authorized user on the Account. On August 26, 2016, Credit One charged off the Account.

On September 3, 2016, Credit One sent a letter addressed to plaintiff's ex-husband at plaintiff's address. The letter informed plaintiff's ex-husband that Credit One had received a request for account information from plaintiff. The letter recited that Credit One would not release account information to any third party without a signed and notarized power of attorney.

The Account remained on plaintiff's Equifax credit report until at least March 13, 2017. The Account was identified as the only negative account on plaintiff's Equifax credit report. But Equifax never issued a consumer credit report about plaintiff in the two years before she filed this lawsuit.

Equifax's records include a single dispute about the Account—the one made by plaintiff. Credit One received no other disputes from plaintiff about the Account through any other credit reporting agencies.

In 2016, plaintiff had an excellent credit rating with Equifax, Experian, and TransUnion. In the past two years, plaintiff has not applied for a new credit card, has not purchased a new car, and has not applied for a mortgage. In the last two years, no one has denied plaintiff credit. Plaintiff purchased a credit monitoring product from Equifax so that she could monitor how the Account was reported on her credit reports.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When it applies this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citing *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To meet this burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to

support the non-movant's claim." *Id.* (citing *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof." *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 670 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)).

The court applies this same standard to cross motions for summary judgment. Each party bears the burden of establishing that no genuine issue of material fact exists and that it is entitled, as a matter of law, to the judgment sought by its motion. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). Cross motions for summary judgment "are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). But where the cross motions overlap, the court may address the legal arguments together. *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### III.    Analysis

The first section, below, addresses the cross motions for summary judgment on plaintiff's FCRA claims against defendant Credit One.  The second section discusses the parties' cross motions on plaintiff's FCRA claims against defendant Equifax.

### A.  Plaintiff's FCRA Claims against Credit One

Plaintiff asserts that defendant Credit One violated 15 U.S.C. § 1681s-2(b)(1) of the FCRA.  Congress "enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).  Among other things, the FCRA imposes various obligations on "furnishers" who provide financial and credit information to credit reporting agencies ("CRAs").  *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010); 15 U.S.C. § 1681s-2.

More specifically, § 1681s-2(b)(1) of the FCRA imposes certain requirements on furnishers of information who receive notice of a consumer dispute from a CRA.  This provision requires the furnisher to:

> (1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.

*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1179–80 (10th Cir. 2013) (quoting *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009)).  *See also* 15 U.S.C. § 1681s-2(b)(1)(A)–(E).  If a furnisher fails to comply with its obligations under § 1681s-

2(b), the FCRA authorizes a consumer to assert a private cause of action.  *Chiang*, 595 F.3d at 36; *Tilley v. Global Payments, Inc.*, 603 F. Supp. 2d 1314, 1322 (D. Kan. 2009).[1]

If a furnisher's negligence violates the FCRA, a consumer can recover her actual damages.  *Llewellyn*, 711 F.3d at 1179 (citing 15 U.S.C. § 1681o(a)).  The FCRA also permits a consumer to recover statutory and punitive damages if the violation was "willful."  15 U.S.C. § 1681n(a); *see also Llewellyn*, 711 F.3d at 1179 ("'Under § 1681n(a), however, the consumer need not prove actual damages if the violation is willful, but may recover punitive damages and statutory damages ranging from $100 to $1,000.'" (quoting *Birmingham v. Experian Info. Sols., Inc.*, 633 F.3d 1006, 1009 (10th Cir. 2011)).

In this case, plaintiff asserts that Credit One violated § 1681s-2(b)(1) because it failed to conduct a statutorily-mandated reasonable investigation of plaintiff's dispute about the Account.  Plaintiff asserts that the summary judgment facts establish that defendant Credit One's procedures for investigating a consumer's FCRA dispute are unreasonable, and thus, plaintiff contends, violate § 1681s-2(b)(1) of the FCRA as a matter of law.  Thus, plaintiff asserts, the court should enter summary judgment for plaintiff finding Credit One liable for violating § 1681s-2(b)(1) of the FCRA.

Credit One disagrees.  It asserts that the summary judgment record presents no triable issues about the reasonableness of its investigation.  In short, Credit One's motion asserts that no

---

[1]     In contrast, § 1681s-2(a)'s requirement that a furnisher provide accurate information to CRAs does not create a private cause of action for a consumer to assert against a furnisher of credit information. *See Chiang*, 595 F.3d at 35 (noting that only § 1681s-2(b), but not § 1681s-2(a), confers a private right of action); *see also Tilley*, 603 F. Supp. 2d at 1322 ("Significantly, Congress did not create a private right of action for violations of § 1681s-2(a).  These duties can only be enforced by governmental agencies and officials.").

reasonable jury could find it negligent.[2]  So, Credit One asks the court to enter summary

judgment against plaintiff's FCRA claim.

The court addresses the parties' summary judgment arguments in the following three

subsections.  First, the court provides the legal standard governing FCRA investigations.  The

court next considers plaintiff's summary judgment arguments, *i.e.*, whether the summary

judgment facts establish that Credit One's procedures for investigating a consumer's FCRA

dispute are unreasonable as a matter of law.  And finally, the court considers Credit One's

summary judgment arguments, *i.e.*, whether the summary judgment facts create a triable issue

about the reasonableness of its FCRA investigation.

### 1.   The FCRA's Investigation Requirement

As provided above, § 1681s-2(b)(1) requires a furnisher, after it receives notice from a

CRA of a dispute about the completeness or accuracy of any information provided to it, to

investigate the disputed information.  15 U.S.C. § 1681s-2(b)(1).  But, "[t]he furnisher's duty to

investigate arises only after a CRA notifies the furnisher of a dispute and, conversely, does not

arise when notice is provided 'directly from a consumer.'"  *Willis v. Capital One Corp.*, 611 F.

App'x 500, 502 (10th Cir. 2015) (quoting *Vilar v. Equifax Info. Servs., LLC*, No. CIV 14-0226

JB/KBM, 2014 WL 7474082, at *13 (D.N.M. Dec. 17, 2014)); *see also Chiang*, 595 F.3d at 35

---

[2]       Credit One also asserts that:  (1) plaintiff's FCRA claim fails as a matter of law because she has
established no actual damages, and (2) plaintiff is not entitled to statutory or punitive damages under the
FCRA because the summary judgment facts fail to show willfulness.  The court does not address these
two arguments because it concludes that plaintiff presents no genuine issue whether Credit One conducted
a reasonable FCRA investigation and, thus, Credit One is entitled to judgment as a matter of law against
plaintiff's FCRA claim.  *See*, *e.g.*, *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1231 (C.D.
Cal. 2007) (after concluding that a plaintiff's FCRA claim failed as a matter of law, the court "need not
address whether [the furnisher's] noncompliance was willful or negligent"); *Cavin v. Home Loan Ctr.,
Inc.*, 469 F. Supp. 2d 561, 573–74 (N.D. Ill. 2007) (after concluding that defendant was entitled to
summary judgment against plaintiff's FCRA claim, the court concluded that it "need not address whether
Defendant's actions constituted a willful violation of the FCRA" or whether "Plaintiffs are required to
demonstrate actual injury in order to recover under the FCRA.").

n.8 ("A notice of disputed information provided directly by the consumer to a furnisher does not

trigger a furnisher's duties under § 1681s-2(b)."). "Thus, a consumer 'cannot recover under §

1681s-2(b) if [she does] not initiate the process for recovery by notifying a CRA of the dispute.'"

*Willis*, 611 F. App'x at 502 (quoting *Vilar*, 2014 WL 7474082, at *13).

In contrast, when a furnisher receives notification of a dispute from a CRA, it must

undertake a "'reasonable' investigation" of the dispute. *Maiteki v. Marten Transp. Ltd.*, 828 F.3d

1272, 1275 (10th Cir. 2016) (quoting *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th

Cir. 2012). The Tenth Circuit has defined a "'reasonable' investigation" as "'one that a

reasonably prudent person would undertake under the circumstances.'" *Id.* (quoting *Seamans v.*

*Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014)).

Whether an investigation was reasonable under the FCRA "'turns on what relevant

information was provided to a furnisher by the CRA giving notice of a dispute.'" *Id.* (first

quoting *Boggio*, 696 F.3d at 617; then citing and quoting *Chiang*, 595 F.3d at 38 ("'[A] more

limited investigation may be appropriate when CRAs provide the furnisher with vague or cursory

information about a consumer's dispute.'"); then citing and quoting *Gorman v. Wolpoff &*

*Abramson, LLP*, 584 F.3d 1147, 1160 (9th Cir. 2009) ("'Congress could not have intended to

place a burden on furnishers continually to reinvestigate a particular transaction, without any

new information or other reason to doubt the result of the earlier investigation . . . .'"). "'[T]he

reasonableness of the investigation is to be determined by an objective standard,'" and "'[t]he

burden of showing the investigation was unreasonable is on the plaintiff.'" *Id.* (quoting *Chiang*,

595 F.3d at 37).

The Tenth Circuit has recognized that "'[w]hether a defendant's investigation is

reasonable is a factual question normally reserved for trial.'" *Id.* (quoting *Westra v. Credit*

*Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)). But "summary judgment [also] is proper if the reasonableness of the defendant's procedures is beyond question." *Id.* (quoting *Westra*, 409 F.3d at 827). When appropriate circumstances are present, "circuit courts have affirmed summary judgments on § 1681s-2(b) claims." *Id.* (first citing *Chiang*, 595 F.3d at 38–39; then citing *Gorman*, 584 F.3d at 1161; then citing *Westra*, 409 F.3d at 827); *see also id.* at 1276–77 (affirming summary judgment against plaintiff's FCRA claim plaintiff had not carried his burden to show that a reasonable jury could conclude from the undisputed facts that defendant's investigation of the dispute was an unreasonable one).

      **2.**   **The Undisputed Summary Judgment Facts Fail to Establish that Credit One's Investigation Violated the FCRA as a Matter of Law to Entitle Plaintiff to Summary Judgment.**

Plaintiff asserts several reasons why, she contends, the summary judgment facts establish that Credit One's investigation was unreasonable as a matter of law. *First*, plaintiff argues that Credit One's investigation procedures are unreasonable because they don't take all information available to Credit One into account. *Second*, plaintiff asserts that Credit One's investigation procedures are unreasonable in a general sense because of the way it employs people to review ACDV disputes. *Third*, plaintiff contends that Credit One's investigation was unreasonable as actually applied to this particular plaintiff. Namely, plaintiff theorizes that Credit One verified plaintiff was an authorized user of the Account instead of determining that plaintiff's ex-husband had identified her as an authorized user without her permission. The court rejects all three arguments and it explains why in the next three sections.

### a. It was not unreasonable for Credit One to consider only the ACDV form in its investigation (and not consider communications that it received from plaintiff after it responded to Equifax).

The undisputed summary judgment facts establish that Credit One received an ACDV form from Equifax with plaintiff's dispute about the Account on July 2, 2016. On that day, the only information that Credit One had received about the dispute was the information plaintiff provided in the ACDV form. An independent contractor working for Credit One then reviewed the dispute form. Two days later, on July 4, 2016, Credit One responded to Equifax, verifying and affirming its reporting of the Account, *i.e.*, that plaintiff was an authorized user on the Account. Plaintiff never had communicated with Credit One about the Account before that date. Instead, the summary judgment facts show that plaintiffs' first contact with Credit One was on July 7, 2016—after Credit One had provided its response to Equifax and after Equifax provided its reinvestigation results to plaintiff. So, when Credit One responded on July 4, 2016—it relied on the information that it had received about the dispute. That information included the ACDV form but not plaintiff's communications because she hadn't submitted those comments yet.

Plaintiff argues that, even though Credit One already had responded to Equifax about plaintiff's dispute on July 4, the FCRA imposed a continuing duty on Credit One to re-respond to the dispute when it later learned more information about the Account directly from plaintiff— both on July 7 and afterward. Indeed, the FCRA requires a furnisher to complete its investigation within 30 days. *See* 15 U.S.C. § 1681s-2(b)(2) (requiring furnishers to complete the investigation requirements within the 30 days specified by 15 U.S.C. § 1681i(a)(1)). And, plaintiff's July 7 communication arrived less than 30 days after Credit One received her dispute from Equifax on July 2.

But, as noted above, a furnisher's duty to investigate arises only when a CRA notifies a furnisher of a dispute. No similar duty arises when a consumer asserts a dispute. *Willis v. Capital One Corp.*, 611 F. App'x 500, 502 (10th Cir. 2015) (citation omitted); *see also Millet v. Ford Motor Credit Co.*, No. 04-2450-CM, 2006 WL 1301160, at *4 (D. Kan. May 9, 2006) ("Without notice by a CRA of a dispute, defendant's obligations under § 1681s-2(b) were not triggered"). So, plaintiff's communications to Credit One in July 2016 triggered no investigative duties under the FCRA. It is undisputed that Equifax received just one dispute about the Account from plaintiff. And Equifax provided information about that one dispute to Credit One by sending the ACDV form on July 2, 2016. Credit One responded to that dispute on July 4, 2016. And the summary judgment record includes no facts showing that Credit One received any other notices from Equifax or any other CRA about the Account. In short, after July 2, nothing happened that re-initiated Credit One's investigative duties under the FCRA.

Also, plaintiff asserts that the FCRA imposes a continuing duty on a furnisher to re-respond to disputes if it learns other information about the dispute within that 30-day period. So, plaintiff contends, when Credit One learned more information about the dispute from plaintiff on July 7—but after it already had responded to Equifax on July 4—the FCRA imposed a duty on it to submit another response to Credit One about plaintiff's dispute. But plaintiff provides no authority to support this argument. And the case law and the statute itself seem to contradict the plaintiff's continuing duty theory. Some courts have recognized that a furnisher completes its investigation when it provides the investigation's results to the consumer either directly or indirectly through the CRA. *See*, *e.g.*, *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016) (observing that "[s]ection 1681s-2(b) contemplates three potential ending points to reinvestigation: verification of accuracy, a determination of inaccuracy or

incompleteness, or a determination that the information 'cannot be verified.'" (quoting 15 U.S.C. § 1681s-2(b)(1)(E)); *Rapapport v. Green Tree Serv., LLC*, No. 13-61624, 2013 WL 5728731, at *6 (S.D. Fla. Oct. 22, 2013) (holding that an FCRA claim accrues when *either* the 30-day period expires *or* the furnisher of information notifies the consumer that it has completed its reinvestigation). Although these cases never explicitly decide whether the 30-day compliance period imposes a continuing duty on a furnisher, the language from these cases suggests that a furnisher's obligation ends after it makes its report back to the CRA.

Also, the statute's plain language requires the furnisher to "report" the results of the investigation to the CRA—using "report" in the singular. 15 U.S.C. § 1681s-2(b)(1)(C). The statute never contemplates multiple reports by a furnisher. And certainly, the statute's plain language establishes no requirement that the furnisher must satisfy a continuing duty to report information that it learns after responding to a dispute but still within the 30-day time period for investigation. If Congress had intended to impose such a continuing duty, it would have imposed that requirement explicitly.

Construing the FCRA to impose a continuing duty on furnishers to provide additional information they learn during the 30-day period would saddle furnishers with a significant burden. Or, as Credit One describes that result, it would create a "logistical nightmare." Doc. 80 at 11. Credit One asserts that furnishers receive hundreds of consumer disputes every week—an assertion supported by the summary judgment facts here. Indeed, the summary judgment record shows that Credit One processes more than 110,000 FCRA disputes a month. Requiring a furnisher to keep each of those investigations open for 30 days would increase the number of open disputes to a staggering number. Without a more explicit directive from Congress, the court cannot conclude that the FCRA intended to require Credit One (and other furnishers) to

track each of these 110,000 disputes for a full 30 days.  Also, requiring furnishers to continue

providing multiple follow-up reports for those disputes if it receives additional information is not

a result supported by the words Congress used in the FCRA.

Also, the Tenth Circuit requires a furnisher to undertake a "'reasonable' investigation" of

the dispute, *i.e.*, "'one that a reasonably prudent person would undertake under the

circumstances.'"  *Maiteki*, 828 F.3d at 1275 (quoting *Boggio*, 696 F.3d at 616).  Plaintiff

provides no authority concluding that a reasonable investigation of a dispute requires a furnisher

to track the dispute for 30 days and then provide updated information to a CRA if it receives

more information after making a report to the CRA.  Indeed, our Circuit even recognizes that "an

investigation does not have to be exhaustive to be reasonable."  *Maiteki*, 828 F.3d at 1276.  For

all these reasons, the court declines plaintiff's invitation to extend the FCRA and impose a

continuing duty on Credit One to submit another report to Equifax after it already had responded

to the dispute on July 4, 2016.

In sum, the summary judgment facts do not entitle plaintiff to summary judgment as a

matter of law.  The admissible evidence in the summary judgment record does not establish that

Credit One conducted an unreasonable investigation.  The summary judgment facts establish that

Credit One considered the available information when it responded to Equifax's dispute on July

4, 2016.  That information was the ACDV form and not plaintiff's later communications.  The

admissible evidence in the summary judgment record does not establish that Credit One

conducted an unreasonable investigation when it never responded a second time to the dispute

after plaintiff contacted it on July 7 about the Account.  Plaintiff has cited no authority to support

her argument that Credit One had a continuing investigative duty to do so.  Likewise, plaintiff

has not persuaded the court that it should establish such a rule as a matter of first impression.

For these reasons, the court rejects plaintiff's first argument supporting her Motion for Partial Summary Judgment.

> **b.  The summary judgment facts create no triable issue whether Credit One generally uses unreasonable investigative procedures.**

Plaintiff next asserts that Credit One's procedures for investigating consumer disputes are generally unreasonable.  She criticizes Credit One's dispute procedures because, she contends: (a) Credit One employs few employees directly to investigate ACDV disputes; (b) its employees or contractors limit their investigation of each dispute to just five or six minutes; and (c) Credit One limits its investigation to information deemed relevant to responding to more than 110,000 disputes it receives in a month.  She asserts that these procedures increased the likelihood that Credit One would permit inaccurate information to remain on a person's credit report, and thus constitute unreasonable procedures as a matter of law.  The court disagrees.

The summary judgment facts, even when viewed in plaintiff's favor, establish that Credit One employed extensive procedures for handling ACDV disputes.  Credit One employs about 150 people to handle ACDV disputes, and it uses overseas vendors who employ another 200 people to investigate ACDV disputes.  Plaintiff criticizes Credit One for not employing ACDV investigators "directly."  But she provides no authority suggesting that a furnisher can discharge its FCRA investigative obligations only by directly employed employees.  As the Circuit has recognized, the FCRA requires furnishers to conduct a reasonable investigation.  *Maiteki*, 828 F.3d at 1275.  It does not mandate the specific mechanism that furnishers must use to discharge that mandate.  The summary judgment facts establish that Credit One provides its contractors performance feedback, constant communication about quality, and joint training.  No admissible evidence suggests that the vendors used by Credit One were merely a façade.

Plaintiff also asserts that Credit One's employees "limit" their investigation to five or six minutes. Doc. 67 at 15. But that's just lawyer argument and the summary judgment facts won't support it. Instead, Credit One's representative testified that the amount of time an employee spends investigating a dispute depends on the character of the documents provided. But, on average, an employee spends about five to six minutes investigating an ACDV dispute. The summary judgment record contains no evidence that Credit One "limits" its employees' investigation of ACDV disputes to five or six minutes.

Last, plaintiff asserts that Credit One limits its investigation to information deemed relevant to responding to more than 110,000 disputes it receives in a month. To the extent plaintiff refers to Credit One's failure to review information that it received *after* it responded to Equifax about the dispute here, the court already has rejected this argument, above. And plaintiff provides no other admissible evidence showing that Credit One confines its investigation to certain information.

In sum, the summary judgment facts fail to establish, as a matter of law, that Credit One's procedures for investigating ACDV complaints are inherently unreasonable in a general sense. For this reason, plaintiff is not entitled to summary judgment in her favor on her FCRA claim against Credit One.

### c. It was not unreasonable for Credit One to verify that plaintiff was an authorized user on the account based on the information plaintiff provided in her dispute form.

Finally, plaintiff asserts that Credit One's investigation was unreasonable because it verified plaintiff as an authorized user of the Account (instead of determining that plaintiff's ex-husband had identified her as an authorized user without her permission).

Here, it is undisputed that plaintiff's ex-husband opened the Account with Credit One, naming plaintiff as an authorized user on the application. Her ex-husband's application also provided plaintiff's address and date of birth and identified plaintiff as his current spouse. Also, there is no dispute that, on June 30, 2016, plaintiff submitted an online dispute about the Account to Equifax. And, on July 2, 2016, Credit One received an ACDV form from Equifax with plaintiff's dispute about the Account.

The summary judgment facts establish that plaintiff identified the dispute code on the ACDV form as "not his account/her account." Plaintiff did not select a dispute code asserting identity theft or fraud. Plaintiff also provided a narrative about her dispute. Her narrative stated that the Account was not her account so she could "only assume it was opened fraudulently" or "posted to my bureau in error." Doc. 75-1 at 1. Plaintiff provided no documents to support her dispute; she never used the phrase "authorized user" in her dispute; and she never explained that her concern was that the Account listed her as an authorized user. Plaintiff also provided no information identifying her ex-husband as the Account holder, or otherwise to explain that he had designated her as an authorized user without her permission.

After Credit One received the ACDV form from Equifax, one of Credit One's outside contractors, Angela Andreas, reviewed plaintiff's dispute. On July 4, 2016, Credit One provided Equifax with a response to the ACDV. It verified and affirmed its reporting of the Account. Credit One also confirmed plaintiff's identification and listed her as an authorized user of the Account.

Plaintiff asserts that Credit One's investigation was unreasonable because it reported to Equifax that plaintiff was an authorized user of the Account. Credit One never detected that the Account should not have listed plaintiff as an authorized user. But, the FCRA's investigation

requirement is a "procedural" one:  "'An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate.'"  *Gissler v. Pa. Higher Educ. Assistance Agency*, No. 16-cv-01673-PAB-MJW, 2017 WL 4297344, at *3 (D. Colo. Sept. 28, 2017) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009)).  Also, "the FCRA does not require perfection, only a reasonable response."  *Alston v. United Collections Bureau, Inc.*, No. DKC 13-0913, 2014 WL 859013, at *8 (D. Md. Mar. 4, 2014).  And "'[w]hether a reinvestigation conducted by a furnisher in response to a consumer's notice of dispute is reasonable . . . depends in large part on . . . the allegations provided to the furnisher by the credit reporting agency.'"  *Gorman*, 584 F.3d at 1160 (quoting *Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 610 (E.D. Pa. 2008)).

Here, the summary judgment facts fail to establish that it was unreasonable, as a matter of law, for Credit One to verify that plaintiff was an authorized user based on the information she provided to the CRA, *i.e.* Equifax.  When Credit One received the dispute, the ACDV form contained the only information plaintiff had provided.  She used the dispute code "not her account" and her narrative claimed that it was "not her account" so she could "only assume it was opened fraudulently" or "posted to my bureau in error."  Doc. 75-1 at 1.  She provided no other information to inform Credit One that her ex-husband had listed plaintiff as an authorized user on the Account without her permission.  These undisputed facts fail to establish that Credit One's investigation of plaintiff's allegations as asserted in the ACDV form was unreasonable as a matter of law.

Plaintiff also contends that Credit One's investigation was unreasonable because it never routed the dispute to its fraud department to investigate.  The summary judgment facts establish

that Credit One employs fraud investigators as part of its customer service team. And they establish that Credit One never forwarded plaintiff's dispute to a fraud investigator. But plaintiff provides no support for her argument that an investigation is unreasonable, as a matter of law, if a furnisher fails to forward it to a fraud investigator. Plaintiff also never explains how forwarding her dispute to a fraud investigator would have changed the result of Credit One's report when the fraud investigator would have reviewed the same information that Ms. Andreas reviewed—the ACDV form. Indeed, to prevail on a section 1681s-2(b) claim, a plaintiff must demonstrate "actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover." *Chiang*, 595 F.3d at 30. Here, plaintiff has adduced no admissible evidence capable of supporting and inference that Credit One could have discovered the inaccuracies based on the scant and incomplete information plaintiff provided. Indeed, a furnisher has no obligation to contact a consumer about a dispute reported to the furnisher by a CRA because "'requiring a furnisher to automatically contact every consumer who disputes a debt would be terribly inefficient and such action is not mandated by the FCRA.'" *Chiang*, 595 F.3d at 36 (quoting *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)). So, without contacting plaintiff to gather more information—something that the FCRA does not require—Credit One only had the information in the ACDV form to consider when investigating the dispute. The court cannot conclude based on the undisputed facts that Credit One's investigation was unreasonable as a matter of law simply because it never involved its fraud department in plaintiff's ACDV dispute.

### d. Conclusion

In sum, the court concludes that the undisputed summary judgment facts fail to establish that Credit One's investigation was unreasonable and thus violated the FCRA as a matter of law. The court thus denies plaintiff's Motion for Partial Summary Judgment.

### 3. The Undisputed Summary Judgment Facts Create No Triable Issue About the Reasonableness of Credit One's Investigation and, thus, Credit One is Entitled to Summary Judgment Against Plaintiff's FCRA Claim.

Defendant Credit One asserts that it is entitled to summary judgment against plaintiff's FCRA claim because no reasonable jury could conclude from the summary judgment facts— even when viewed in plaintiff's favor—that its investigative procedures violated the FCRA as a matter of law. The court agrees.

Here, the summary judgment facts establish that plaintiff disputed Credit One's report to Equifax that she was an authorized user on the Account. Plaintiff selected the dispute code "not her account" and recited in the narrative portion it was not her account so she could "only assume it was opened fraudulently" or "posted to my bureau in error." Doc. 75-1 at 1. After Credit One received plaintiff's dispute from Equifax, it investigated the matter by having one of its contract employees, Angela Andreas, review the ACDV form. And, that review determined that Credit One's records were consistent with the information it had reported to Equifax. The Account's application listed plaintiff as an authorized user. It provided the same address and birth date that plaintiff had provided on the ACDV form as her address and birth date. And, based on the substance of plaintiff's dispute, Credit One had no reason to doubt the accuracy of its records.

Indeed, plaintiff never used a dispute code for identity theft or fraud. She only asserted that she "assumed" the Account was openly fraudulently but she provided no other information

that would have permitted Credit One to discern that plaintiff's ex-husband had named her as an authorized user without her permission. She also never explicitly asserted that she was disputing the report based on fraud. Instead, plaintiff provided two reasons that she believed the account was "not her account": (1) she assumed it was opened fraudulently; or (2) it was posted in error. The court concludes that no reasonable factfinder could find, based on the meager and equivocal information provided, that Credit One should have understood that plaintiff was asserting fraud. *See Scheel-Baggs v. Bank of Am.*, 575 F. Supp. 2d 1031, 1040 (W.D. Wisc. 2008) (holding that the consumer's use of the word "fraud" in isolation did not render a furnisher's investigation unreasonable when the other information the consumer provided was "scant" and provided the furnisher "no reason to conduct a more thorough investigation"); *see also Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (affirming summary judgment against an FCRA claim because the furnisher's investigation was "reasonable given the scant information it received regarding the nature of [the consumer's] dispute" and noting that had the consumer provided information "that the nature of the dispute concerned fraud, then *perhaps* a more thorough investigation would have been warranted" but "[g]iven the facts of [the] case, however, [the furnisher's] verification of [the consumer's] information was a reasonable procedure." (emphasis added)).

On these undisputed summary judgment facts, no reasonable jury could conclude that Credit One's investigation of plaintiff's dispute was an unreasonable one. Credit One employs procedures to investigate FCRA disputes. One of its contract employees reviewed plaintiff's dispute. Credit One verified the accuracy of the information based on its records and the information plaintiff had provided in the ACDV form. And it confirmed plaintiff's identification

and listed her as an authorized user of the Account in its July 4, 2016 report to Equifax.  By doing so, Credit One satisfied its obligations under FCRA section 1681s-2(b).

For these reasons, the court grants summary judgment against plaintiff's FCRA claim against Credit One.

### B.  Plaintiff's FCRA Claims against Equifax

The court now turns to the cross motions for summary judgment on plaintiff's FCRA claims against Equifax.  Plaintiff asserts two FCRA claims against Equifax under two different provisions of the Act:  (1) the reasonable procedures provision (15 U.S.C. § 1681e(b)), and (2) the reinvestigation provision (15 U.S.C. § 1681i(a)).  Plaintiff contends that Equifax negligently and willfully violated these provisions.

A claim for negligent noncompliance with § 1681e(b) requires plaintiff to establish four elements:  (1) Equifax failed to follow reasonable procedures to assure the accuracy of its reports about her; (2) Equifax prepared a consumer report about her that was inaccurate; (3) plaintiff sustained actual damages; and (4) Equifax's failure to follow reasonable procedures caused plaintiff's damages.  *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239 (10th Cir. 2015) (citing *Eller v. Trans Union, LLC*, 739 F.3d 467, 473 (10th Cir. 2013)); *see also Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1217 (10th Cir. 2002).

A claim for negligent noncompliance with § 1681i(a) requires plaintiff to establish five elements:  (1) Equifax failed to follow reasonable procedures in reinvestigating plaintiff's dispute about her report; (2) her report was inaccurate; (3) plaintiff sustained actual damages; (4) Equifax's failure to follow reasonable procedures caused plaintiff's damages; and (5) plaintiff informed Equifax about the inaccuracy.  *Wright*, 805 F.3d at 1242 (first citing *Cushman v. Trans*

*Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997); then citing *Cortez v. Trans Union, LLC*, 617

F.3d 688, 712–13 (3d Cir. 2010)).

The court elects to analyze the cross motions by addressing Equifax's motion first.  It

concludes that Equifax is entitled to summary judgment against both of plaintiff's FCRA claims

for several reasons.  Plaintiff's § 1681e(b) claim fails as a matter of law for two, independent

reasons:  (1) plaintiff fails to adduce admissible evidence creating a genuine issue for trial

whether Equifax failed to follow reasonable procedures to assure the accuracy of its report; and

(2) the summary judgment facts create no triable issue whether Equifax issued an inaccurate

consumer report to a third party.  And plaintiff's § 1681i(a) claim fails as a matter of law because

plaintiff adduces no admissible evidence creating a triable issue whether Equifax failed to follow

reasonable procedures when reinvestigating plaintiff's dispute about her report.  For these

reasons,[3] the court grants summary judgment against both of plaintiff's FCRA claims.  The court

explains its reasoning in greater detail below.

The court also concludes that plaintiff should not prevail on her Motion for Partial

Summary Judgment on her FCRA claims against Equifax.  Plaintiff seeks partial summary

judgment in her favor on the elements of her FCRA claims requiring Equifax to follow

reasonable procedures to assure the accuracy of its reports and for reinvestigating plaintiff's

dispute about her report.  Plaintiff asserts that the summary judgment facts establish, as a matter

of law, that Equifax's procedures were unreasonable.  But, as the court concludes below, the

summary judgment facts, even when viewed in plaintiffs' favor, present no triable issues about

---

[3]       Equifax also asserts that it is entitled to summary judgment against plaintiff's FCRA claims
because she has come forward with no admissible evidence supporting an issue for trial whether:  (1)
Equifax reported inaccurate information; (2) plaintiff sustained actual damages; or (3) Equifax's alleged
FCRA violations were willful.  Because the court concludes that the summary judgment facts fail to
present an issue for the jury to decide on other required elements of plaintiff's FCRA claims, the court
need not address Equifax's remaining arguments.

the reasonableness of Equifax's procedures.  No reasonable jury could find for plaintiff on her

claims against Equifax, so the court also denies plaintiff's Motion for Partial Summary

Judgment.

### 1. The Summary Judgment Facts Present No Genuine Issue Whether Equifax Failed to Follow Reasonable Procedures When Preparing a Consumer Report to Support Plaintiff's FCRA Claim Under § 1681e(b).

Equifax asserts that the court should grant summary judgment against plaintiff's §

1681e(b) claim because the summary judgment record contains no admissible evidence capable

of creating a triable issue whether Equifax failed to follow reasonable procedures when

preparing plaintiff's consumer report.  Instead, Equifax asserts, the summary judgment facts

establish that Equifax reasonably relied on Credit One's information when it reported and

reinvestigated the Account.

Three years ago, the Tenth Circuit recognized that "[t]he FCRA does not define

'reasonable procedures,' and the Tenth Circuit has not yet addressed this term."  *Wright v.*

*Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239 (10th Cir. 2015).  But, our Circuit explained that

"[o]ther circuits applying § 1681e(b) have recognized the 'reasonableness of the procedures' is a

fact-dependent inquiry, 'and whether the agency followed them will be jury questions in the

overwhelming majority of cases.'"  *Id.* (first quoting *Guimond v. Trans Union Credit Info. Co.*,

45 F.3d 1329, 1333 (9th Cir. 1995); then quoting *Cahlin v. Gen. Motors Acceptance Corp.*, 936

F.2d 1151, 1156 (11th Cir. 1991)).  But this observation does not eliminate summary judgment

in FCRA cases.  Indeed, the Circuit explained, "in cases where CRAs clearly employ reasonable

procedures, the issue may be decided on summary judgment."  *Id.* (citing *Crabill v. Trans Union,*

*L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001)); *see also id.* (affirming summary judgment against

plaintiff's § 1681e(b) and § 1681i(a)(1)(A) claims because, the Circuit concluded, defendant had used reasonable procedures to report and to reinvestigate plaintiff's dispute).

Here, plaintiff's only argument that Equifax's procedures for preparing reports are unreasonable is that it relied on information furnished by Credit One. But plaintiff provides no explanation why it was unreasonable for Equifax to do so. Indeed, our Circuit has recognized that "CRAs must look beyond information furnished to them when it is inconsistent with the CRAs' own records, contains a facial inaccuracy, or comes from an unreliable source." *Id.* at 1239–40 (first citing *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708–11 (3d Cir. 2010); then citing *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51–53 (D.C. Cir. 1984); then citing *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008); then citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997)). But "CRAs are not required to research further when 'the cost of verifying the accuracy of the source' outweighs the 'possible harm inaccurately reported information may cause the consumer.'" *Id.* (citations omitted).

Here, plaintiff comes forward with no evidence showing that the information provided by Credit One was inconsistent with Equifax's records or contained a facial inaccuracy. The summary judgment record also contains no evidence showing that Credit One was an unreliable source. Instead, the summary judgment facts establish that Equifax accepts credit information from sources that it has determined are reasonably reliable based upon Equifax's own investigation, the source's reputation in the community, or Equifax's longstanding business relationships with the source. Before Equifax accepts information from a data furnisher, it generally conducts an investigation to ensure that the company is reliable. It also requires each company to complete a detailed application and sign a subscriber agreement that, among other things, requires data furnishers to supply only accurate, up-to-date information. Then, when

Equifax receives information from the data furnisher, Equifax conducts a series of computerized

quality checks before it adds that data to its consumer database.  No reasonable jury could

conclude from these undisputed facts that Equifax fails to follow reasonable procedures when

preparing consumer reports.

Plaintiff also has failed to present a triable issue whether Equifax's procedures for

preparing reports are unreasonable simply because it reported information that, she contends,

was inaccurate, *i.e.*, that she was an authorized user on the Account.  Even if Equifax had

reported inaccurate information, "[a]n inaccuracy in a [credit] report does not necessarily mean

that a consumer has a cause of action or that the agency is automatically liable."  *Jones v. Credit*

*Bureau of Garden City, Inc.*, 703 F. Supp. 897, 901 (D. Kan. 1988) (citing *Bryant v. TRW, Inc.*,

689 F.2d 72, 78 (6th Cir.1982)).  "The Act does not create strict liability for a credit reporting

agency's errors."  *Id.*  "Instead, liability turns upon whether an agency has maintained reasonable

procedures to assure the maximum possible accuracy of the information in the report."  *Id.*

(citing 15 U.S.C. § 1681e).  In this fashion, the FCRA "recognizes the reality of unavoidable

mistakes and imposes no liability for inaccuracies when an agency has followed reasonable

procedures."  *Id.*

So, when "a [CRA] accurately transcribes, stores and communicates consumer

information received from a source that it reasonably believes to be reputable, and which is

credible on its face, the agency does not violate [§ 1681e] simply by reporting an item of

information that turns out to be inaccurate."  *Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1217

(10th Cir. 2002) (citation and internal quotation omitted); *see also Saenz v. Trans Union LLC*,

621 F. Supp. 2d 1074, 1081 (D. Or. 2007) (quoting the same language recited in *Cassara* and

concluding that defendant was entitled to rely on facially accurate information from a furnisher

and that defendant's procedures did not produce the inaccuracy so the inaccuracy, alone, "simply does not permit any inference [about] the reasonableness of [the defendant CRA's] procedures").

Here, plaintiff has come forward with no admissible evidence presenting a genuine issue about the reasonableness of Equifax's procedures. So, even if Equifax prepared an inaccurate report about plaintiff, her § 1681e(b) claim still fails as a matter of law. The court thus grants summary judgment against plaintiff's § 1681e(b) claim.

> **2. The Summary Judgment Facts Establish No Genuine Issue Whether Equifax Issued a "Consumer Report" to Support Plaintiff's FCRA Claim Under § 1681e(b).**

The court also grants summary judgment against plaintiff's FCRA claim under 15 U.S.C. § 1681e(b) for a second and independent reason. One element of a § 1681e(b) claim requires the plaintiff to present facts capable of supporting a genuine issue whether Equifax prepared a "consumer report" about her "that was, in fact, inaccurate." *See Wright*, 805 F.3d at 1239. Here, Equifax asserts, the summary judgment facts, even when viewed in plaintiff's favor, establish that Equifax never issued a consumer report about plaintiff. Thus, Equifax argues, the court should grant summary judgment against plaintiff's § 1681e(b) claim for this additional, independent reason. The court agrees.

In the Tenth Circuit, for a plaintiff "[t]o prevail on [her] § 1681e(b) claims, [she has] to prove not only that [a CRA] failed to follow reasonable procedures . . . but also that it produced inaccurate 'credit reports'—[a term of art] defined in the FCRA . . . as a communication of credit information to a third party—that were the proximate cause of [her] injuries." *Eller v. TransUnion, LLC*, 739 F.3d 467, 474 (10th Cir. 2013) (first citing 15 U.S.C. § 1681a(d); then citing *Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1217 (10th Cir. 2002)).

The FCRA also requires that "[w]henever a [CRA] prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). So, for FCRA liability to attach, a CRA must prepare a consumer report. A consumer report is "any written, oral, or other communication of any information by a [CRA] bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for," personal credit or insurance purposes, employment purposes, and other purposes. 15 U.S.C. § 1681a(d)(1).

As the Seventh Circuit has explained: "There is no consumer report unless there is a 'communication . . . for the purpose of serving as a factor in establishing the consumer's eligibility for' credit or other statutorily enumerated purposes, *i.e.*, there cannot be a consumer report without disclosure to a third party." *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 833–34 (7th Cir. 2004), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56 n.8 (2007) (citing *Renninger v. ChexSystems*, No. 98 C 669, 1998 WL 295497, at *4–5 (N.D. Ill. May 22, 1998) (internal citations omitted)).

Here, the undisputed facts establish that Equifax never issued a consumer report about plaintiff to a third party about plaintiff in the two years before she filed this lawsuit. Although Equifax prepared some consumer disclosures for plaintiff in response to her requests for her credit file or in response to her credit disputes, none of those disclosures qualify as consumer reports in the sense that the FCRA defines that term. 15 U.S.C. § 1681a(d)(2)(A)(i) (explaining

that "the term 'consumer report' does not include . . . any report containing information solely as to transactions or experiences between the consumer and the person making the report.").

Plaintiff responds to this argument, asserting that her credit report shows that certain companies viewed, obtained, or used her credit report when it showed that she was an authorized user on the Account. *See* Doc. 83-4 at 40–41. But the credit report she cites cannot abide her characterization of that evidence. The report shows that certain companies made "[i]nquiries that do not impact your credit rating," such as inquires that provided only plaintiff's name and address, or inquires that involved a periodic review of plaintiff's credit history for a particular creditor's account. Plaintiff has adduced no evidence capable of supporting a finding that the companies—with these inquires—viewed or used an Equifax credit report that included inaccurate information about plaintiff. Without evidence to create a triable issue whether Equifax prepared a consumer report and communicated that report to a third party, plaintiff's FCRA claim under § 1681e(b) fails as a matter of law. *See, e.g.*, *Jackson v. Warning*, No. PJM 15-1233, 2016 WL 7228866, at *6 (D. Md. Dec. 13, 2016) (dismissing plaintiff's § 1681e(b) claim because he never alleged that defendant prepared a credit report about him and disclosed it to a third party); *Sgouros v. Transunion Corp.*, No. 14 C 1850, 2016 WL 4398032, at *4 (N.D. Ill. Aug. 18, 2016) (holding that plaintiff had no "viable cause of action under § 1681(e)(b) because he was the only recipient of the [consumer report]" and "[b]ecause no third party ever received that score, it is not considered a 'consumer report'" and thus "does not trigger the protections of § 1681e(b).").

**3. The Summary Judgment Facts Present No Genuine Issue Whether Equifax Failed to Follow Reasonable Procedures When It Reinvestigated Plaintiff's Dispute, as Required by the FCRA under 15 U.S.C. § 1681i(a).**

Equifax asserts that plaintiff's § 1681i(a) claim fails as a matter of law because plaintiff has adduced no admissible evidence that Equifax followed unreasonable procedures when it reinvestigated plaintiff's dispute. Section 1681i(a) requires CRAs to "reinvestigate" the accuracy of information disputed by a consumer. 15 U.S.C. § 1681i(a)(1)(A). The statute "does not define the term 'reasonable reinvestigation,'" but "courts have consistently held a reasonable reinvestigation requires more than 'making only a cursory investigation into the reliability of information that is reported to potential creditors.'" *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015) (citing *Cortez v. Trans Union, LLC*, 617 F.3d 688, 713 (3d Cir. 2010)). "Thus, '[a] credit reporting agency that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice.'" *Id.* (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 286 (7th Cir. 1994)). "'In short, when one goes from the § 1681e(b) investigation to the § 1681i(a) *re* investigation, the likelihood that the cost-benefit analysis will shift in favor of the consumer increases markedly.'" *Id.* (quoting *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997)). But a reasonable investigation "does not require CRAs to resolve legal disputes about the validity of the underlying debts they report." *Id.* (first citing *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010); then citing *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008)).

Here, the undisputed facts establish that Equifax maintains detailed policies and procedures designed to assure that it conducts reasonable reinvestigations of information that consumers dispute as inaccurate. It employs individuals who handle these consumer disputes

and they have completed a training process that includes classroom instruction, a competency test, and on-the-job training. When Equifax receives a dispute, it locates the consumer's credit file and opens an Automated Consumer Interview System ("ACIS") case that tracks the process of the reinvestigation. Equifax then reviews and considers all relevant information—including documentation, if any, provided by the consumer—and reviews the contents of the consumer's credit file. If further investigation is required, Equifax notifies the source of the account information about the consumer's dispute, identifies the nature of the consumer's dispute, and includes the consumer's account information as it then appears in Equifax's credit file. Equifax generally communicates with data furnishers by transmitting the ACDV form. Equifax's contract and the FCRA require the data furnisher to conduct its own investigation and report the results back to Equifax. After Equifax receives the report from the data furnisher, it takes action, if necessary, and notifies the consumer. And, when the reinvestigation is complete, Equifax sends the consumer the results.

The summary judgment record shows that Equifax followed this process with plaintiff's dispute here. It sent the dispute to Credit One, and Credit One verified the accuracy of the information. But plaintiff asserts that these procedures were not reasonable ones for several reasons.

*First*, she contends that it was unreasonable for Equifax to forward the ACDV form to Credit One without having a human being review the information that plaintiff had submitted online. But she fails to explain how a personal review of the information would have produced a different outcome here. The only information that plaintiff provided to Equifax was the information on her dispute form. Plaintiff asserted that the Account was "not her account" so she "can only assume it was opened fraudulently or posted to my bureau in error." Doc. 75-1 at

1. The only means Equifax had to investigate her dispute was to send the submitted information to Credit One for it to verify the accuracy of the information Credit One had reported about plaintiff.

Plaintiff asserts that Equifax's procedures place the burden on a consumer to select the correct dispute code. But, as Equifax explains, the dispute code is not the only information that the consumer provides when completing the online dispute. A consumer also may provide a narrative and attach documents to support the dispute. Plaintiff here completed such a narrative. And her narrative is consistent with the dispute code that she herself selected—she asserted that the Account was not her account. Equifax also offers other avenues a consumer may use to initiate a dispute—through the mail or by telephone. So, if plaintiff had any uncertainty about how to code her dispute, she could have contacted Equifax through another medium.

In sum, plaintiff fails to show that Equifax's reinvestigation procedures were unreasonable simply because it uses an automated process to transmit an online dispute to a data furnisher without first involving a human being.

*Second*, plaintiff asserts that Equifax's reinvestigation procedures are unreasonable because they use different procedures for different data furnishers. But, as Equifax explains, these procedures correspond to the reinvestigation procedures that the furnishers have chosen to follow. Under 12 C.F.R. Pt. 1002, Supp. I, § 1002.10(2), "a creditor has the option to designate all joint accounts (or all accounts with an authorized user) to reflect the participation of both parties, whether or not the accounts are held by persons married to each other." So, as Equifax explains, this authority gives a furnisher the option to delete authorized user accounts when disputed. Some of Equifax's data furnishers have decided to delete authorized user accounts when they are disputed in lieu of reinvestigating the information. For those furnishers, Equifax

38

follows a policy of deletion. But Credit One has not directed Equifax to delete authorized user account information upon receiving the dispute. So, Equifax has established no furnisher-specific procedure for how to handle a report by a consumer disputing a Credit One authorized user account. Instead, Equifax follows a policy of reinvestigating consumer disputes when they involve a report of a Credit One authorized user account. The differences between Equifax's methods for handling consumer disputes for furnishers who have directed Equifax to delete authorized user information upon dispute creates no triable issue about the reasonableness of Equifax's reinvestigation procedures.

*Third,* plaintiff asserts that Equifax's reinvestigation procedures are unreasonable because they did not remove the Account from her report after she initiated the dispute. But plaintiff cites no legal authority for this argument. In fact, as explained above, the regulatory guidance permits the reporting of authorized user status. And, as Equifax explains, good reasons exist in the credit industry for its practice of reporting authorized user accounts, *i.e.*, because the information may assist lenders when making credit lending decisions.

For all these reasons, the court concludes that plaintiff has failed to create an issue warranting a trial to decide plaintiff's claim based on reasonable reinvestigation procedures. The court thus grants summary judgment against plaintiff's § 1681i(a) claim.

### 4. The Court Denies Plaintiff's Motions for Partial Summary Judgment.

Plaintiff has moved for partial summary judgment on the liability issues presented by her FCRA claims. She asserts that the summary judgment facts present no triable issue whether Equifax failed to follow reasonable procedures to ensure the accuracy of its reports and for reinvestigating plaintiff's dispute about her report. Thus, she asserts, she deserves summary judgment in her favor on Equifax's FCRA liability.

But as the court already has explained, plaintiff has failed to demonstrate that she can establish essential elements of all her FCRA theories and claims. In doing so, the court has considered and ruled on all the arguments advanced by plaintiff's partial summary judgment motion. These failings negate any basis for a finding—as a matter of law—that Equifax failed to follow reasonable procedures for assuring the accuracy of its reports and reinvestigating plaintiff's dispute about her report. The court concludes that none of these arguments—even when viewing the summary judgment facts in plaintiff's favor—could establish liability on this element of a § 1681e(b) or § 1681i(a) claim as a matter of law. Indeed, the court's summary judgment conclusion is the opposite of the one plaintiff advances. The court thus denies plaintiff's Motion for Partial Summary Judgment against Equifax.

## IV.    Conclusion

The court recognizes that plaintiff is upset by the situation here. Her ex-husband opened a credit card account, identifying her as an authorized user without her knowledge or consent. It is unfortunate that he did so. And it is also unfortunate that he defaulted on the Account. But plaintiff was not obligated or required to pay the debt he created on that Account. And, when plaintiff called Credit One to dispute the Account on July 7, 2016, Credit One removed plaintiff as an authorized user from the Account. Despite the Account's listing on her credit report, plaintiff had excellent credit ratings with Equifax, Experian, and TransUnion in 2016. And, in the past two years, no one has denied plaintiff credit.

Although plaintiff complains about how Credit One and Equifax handled her dispute over the Account, the summary judgment facts, when viewed in her favor, simply can't support a triable issue under the law governing her FCRA claims. So, for the reasons explained above, the

court grants defendants' motions for summary judgment and denies plaintiff's motions for partial summary judgment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Equifax Information Services, LLC's Motion for Summary Judgment (Doc. 61) is granted.

**IT IS FURTHER ORDERED THAT** defendant Credit One Bank, N.A.'s Motion for Summary Judgment (Doc. 64) is granted.

**IT IS FURTHER ORDERED THAT** plaintiff Lucretia L. Stewart's Motion for Partial Summary Judgment against defendant Credit One Bank, N.A (Doc. 66) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff Lucretia L. Stewart's Motion for Partial Summary Judgment against defendant Equifax Information Services, LLC (Doc. 68) is denied.

**IT IS SO ORDERED.**

**Dated this 2nd day of March, 2018, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
